Joseph Modugno, J.
This is a claim for the appropriation of claimant’s land pursuant to section 30 of the Highway Law, which proceeding is described as Interstate Route 502, Section I — 87 — 2 — 6, Armonk to Route 172, Westchester County, Map No. 495, Parcel Nos. 657, 658, 659, 662 and 692.
The aforesaid map and description were filed in the office of the County Clerk of Westchester County on December 20, 1966.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on December 4, 1968, and has not been assigned or submitted to any other court or tribunal for audit or determination.
The court adopts the description of the appropriated property as shown on the map and description filed in the County Clerk’s office, a copy of which is attached to the claim and the same is incorporated herein by reference.
Claimant was the owner of the property by reason of the following deeds:
1. Deed dated December 21, 1954 from Anna R. Butler, grantor, to The Nature Conservancy, grantee, recorded in the Westchester County Clerk’s office on December 22,1954 in Liber 5405, at Page 411;
2. Deed dated April 27,1955 from The Glen Ridge Corporation, grantor, to The Nature Conservancy, grantee, recorded in the Westchester County Clerk’s office on May 31, 1955, in Liber 5460, at Page 376;
3. Deed dated May 2, 1957 from Walter Huber, grantor, to The Nature Conservancy, grantee, recorded in the Westchester County Clerk’s office on May 14,1957, in Liber 5698, at Page 437;
4. Deed dated October 19, 1965 from Margaret Sloane Patterson, grantor, to The Nature Conservancy, grantee, recorded in *1015 the Westchester County Clerk’s office on November 12, 1965, in Liber 6562, at Page 393; and
5. Deed dated September 7,1966 from Bussell Ziejick, grantor, to The Nature Conservancy, grantee, recorded in the Westchester County Clerk’s office on September 9, 1966, in Liber 6649, at Page 387.
Before the appropriation, the property consisted of 305.737 acres of wooded land.
Claimant, The Nature Conservancy, Inc., is a national nonprofit membership organization, incorporated in the District of Columbia for scientific and educational purposes. Its primary objective is to acquire and protect outstanding natural land areas.
The subject property is lmown as the Butler Sanctuary. It was used and occupied at the time of the appropriation as a nature and wildlife conservation sanctuary. The property was open to the public. The Butler Sanctuary conducted excellent educational programs enjoyed by thousands of school children who learned the countless intrinsic values of conservation, preservation of natural resources, and wildlife habitats.
The State’s appropriation consisted of the following parcels:
(a) Parcel 659 (map 495), situate in the northeast corner, along the Chestnut Bidge Boad frontage, having 699 feet of frontage on the said Chestnut Bidge Boad and containing 4.795± acres, acquired in fee, without the .right of access to or from the abutting remainder;
(b) Parcel 662 (map 495) also taken from the northeast corner of the subject property, containing 0.554± acres, acquired in fee, which, together with Parcel 659, cut off claimant’s remaining land from the Chestnut Bidge Boad on its northerly border with that road;
(e) Parcel 657 (map 495) with a frontage of 128 feet on the westerly side of Chestnut Bidge Boad, containing 1.013± acres, acquired in fee, and thereby leaving the remaining property without access;
(d) Parcel 658 (map 495) adjacent to the westerly side of Parcel 657, containing 1.144± acres, acquired in fee;
(e) Parcel 692 (map 495) an irregular parcel in the southeast corner of the subject property containing 1.527± acres also acquired in fee.
To cure the problem of access created by the appropriation, the State erected a concrete and steel bridge approximately 350 feet long across the new highway to claimant’s remaining property, thereby preventing the landlocking of 296.704± acres.
The claimant’s appraiser testified that the average per acre *1016 value of the entire subject property prior to the taking was $1,700 per acre and the value of the remainder was $1,350 after the taking. .
The State’s appraiser ascribed a value of $1,146 per acre before the taking, arriving at a total value of the subject property of $330,400 before the taking and $319,650 after the taking. He found the direct damage to be $10,750 and failed to find any severance or consequential damages.
The highest and best use of claimant’s property both before and after the appropriation was a natural conservation sanctuary, and, in the alternative, residential subdivision.
Claimant’s Exhibits 13 to 23 were allowed into evidence not because of their cogent probative value, but rather as background material for a better understanding of the problem involved in this case. They deal with the now historical controversy which arose in an attempt to prevent the condemnation of the subject property. These documents will be of greater help to future historians and ecologists wishing to dramatize the fact that in our present society ecological factors are often sacrificed on the altar of progress.
The subject proceeding appropriated approximately 9.033 ± acres of claimant’s property.
Many collateral issues raised in this case such as the necessity of the road construction, the effects of alternative road locations on the wildlife and conservation preserves, and the forethought of the highway engineers with regard to the destruction of recreation and conservation areas, are neither within the province nor the jurisdiction of this court.
The court rejects claimant’s contention that it is entitled to a portion of that money which the government saved ($4,000,000) by not constructing the highway on an alternate route. This contention, which represents a novel and bold appraisal concept, has no basis in law and is contrary to all established legal precedents. The issue here is to determine whether or not there are any consequential damages to the remaining property. On this point the court disagrees with the State’s appraiser, who has stated that since the highest and best use has remained the same, there are no consequential damages. I find that the taking in this case did have adverse ecological effects on the property and that the value of the remainder for its highest and best use, although not entirely destroyed, has been substantially diminished.
To hold otherwise would be an unreasonable denial of real and substantial values. Such a contrary holding would also be against the public interest and inconsistent with our national *1017 commitment to future generations to conserve land in its wild, natural beauty for their peaceful enjoyment and well-being. It is important to note that this is a nature preserve; a sort of living museum of what our world was like before high-rise buildings and speeding automobiles. The entire area about the subject property abounds with similar areas, such as the Westmoreland Sanctuary, the Moral Rearmament Preserve, the Cenacle, the Mt. Kisco Reservoir, and the Fox Land School; all of this situated within 20 miles of New York City.
The Butler Nature Conservancy was established to preserve some 305.737± acres in their natural state and to provide a place where this generation and future generations could go and be a part of nature so close to a bustling city and a giant metropolis. This nature preserve represented the quintessence of solitude, a place where one could feel the tranquility of nature and be isolated from harsh sounds and offensive odors unfortunately and frequently associated with our civilization.
Living as we do today in a society where ecology has become a national priority, justice demands that the despoiler, whether individual, corporation, or government, be compelled to pay for that which he spoils.
It would appear from the case law that the courts have progressed in just such a direction in the last decade prior to this determination. Judicial decisions appear to reflect the continuing growth of the public awareness and concern for our terrestrial environment.
It is fitting and proper, therefore, that in the instant case the claimant, whose sole raison d’etre, by the very nature of its corporate charter, is the preservation of our natural resources and the effective instrumentality thereof, be adequately compensated for the serious consequential damages sustained as the result of the State’s action.
Since the Court of Claims lacks those equitable powers which can be found in most other courts of the State, we can only look to those cases arising in this court for guidance. In 1960 the Appellate Division, Third Department, in Mount Hope Cemetery Assn. v. State of New York (11 A D 2d 303, 313) stated what was then the rule with regard to consequential damages created by the New York State Thruway, where Bergan, P. J., said:
“ On the other hand claimant argues that 100% damage for the area beyond the State lines is wholly justified and that 1 the noise and disturbance ’ created by the ‘ heavy traffic on the Thruway ’ have substantially changed ‘ the quietude and tranquility of the cemetery in the country ’.
*1018 ‘1 There is opinion evidence in the record of depreciation in this respect; but we regard these opinions as speculative and' theoretical. There is, of course, traffic noise on the Thruway; but the cemetery is also adjacent to the Saw Mill River Parkway; and the traffic there has been heavy for years. Some of the best developed areas of the cemetery, as well as its principal approaches and lawns, have directly abutted the parkway; and beyond the parkway is a railroad. Thruway traffic fluctuates and it is not satisfactorily demonstrated that 100 feet on each side of the State’s right of way will be 100% lost to the cemetery at a cost to the State, under the Court of Claims decision of $185,379.90.
“ We think there is possibly some depreciation, but that it is not large. We are of opinion that it does not exceed the amount which the State concedes and which it computes by treating the loss as 1.5354 acres.”
Whether the opinion would have been different had the property there not already bordered on a busy thoroughfare is truly speculative and in the instant case we are concededly dealing with what was previously an isolated piece of land.
From the case involving Mount Hope Cemetery (supra), we progress to Dennison v. State of New York, which was decided by this court in 1965 and is reported in 48 Misc 2d 778. At that time this court stated what it believed to be the rule concerning the damages to be awarded due to the construction of a highway over lands appropriated from a claimant whose remaining lands now border that highway. Lengyel, J., of this court at page 784 stated: “ We have considered the loss of privacy and seclusion, the loss of view, the traffic noise, lights, and odors all as factors causing consequential damage to the remaining property.”
This decision involving Dennison v. State of New York was later affirmed by the Appellate Division, Third Department in 1967 and is reported in 28 A D 2d 28. In affirming the decision, Reynolds, J., stated at page 29: “ The State initially objects to the Court of Claims ’ consideration of noise as a factor in determining consequential damages. We have affirmed the principle that under certain circumstances noise is a proper element of consequential damage ”.
In writing his opinion Judge Reynolds cited Mount Hope Cemetery Assn. v. State of New York (supra pp. 29-30). Further in that paragraph the court states: “ Similarly the interrelation of noise in the instant case with elements such as loss of vision and privacy would have made it impossible for the Court of Claims to attribute a separate specific amount as attributable *1019 to noise and accordingly we see no error in the Court of Claims’ failure to do so.”
Dennison v. State of New York (22 N Y 2d 409, 410-411) reached the Court of Appeals in 1968, and in writing the majority opinion Keating, J., set forth the same principles which we must apply in this case when he stated: ‘ ‘ Like most programs undertaken in the name of Twentieth Century progress, the massive public highway construction launched in recent years has produced its share of problems and inconveniences. Of particular concern has been the damage done to the quiet beauty of many once remote and inaccessible areas, as well as the intrusion of the seemingly endless line of asphalt and concrete into the enclaves which many people have sought as surcease from the hustle and bustle of modern day life. ’ ’
Then at page 412: ‘ ‘ The State concedes that it is well settled in this State that, where there is a partial taking, consequential damages which ensue upon the taking are to be considered in determining the award and that, among other things, damages which arise from the use of the parcel taken are entitled to consideration (see, e.g., South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301) ’ ’, and at page 413:
“ As we view the case, it would have been practically impossible for the court to separate the noise element from the other elements which, it is conceded, were properly considered — the loss of privacy, seclusion and view. * * * In the instant case and cases of like kind, however, we believe that the practical difficulties attendant upon accepting the State’s theory of evaluating damages outweighs any benefit likely to be derived from applying it.”
Chief Judge Fuld in a concurring opinion wrote at page 414: ‘ ‘ The essential factor which distinguishes the case before us from the general run of cases — and, perhaps, relates it to those involving hospitals and cemeteries (see, e.g., Mount Hope Cemetery Assn. v. State of New York, 11 A D 2d 303, 313, affd. 10 N Y 2d 752) — is the quietude, the tranquility and the privacy of the property, qualities which the claimant prized and desired and which undoubtedly are items that would be taken into account by an owner and a prospective purchaser in fixing the property’s market value. ’ ’
The condition of the property before and after is best summed up by claimant’s appraisal report where it states at page 19: “ Formerly, the subject property had among its principal amenity virtues, a naturally wooded rural character, providing quietude, tranquility, and privacy, all of which were qualities highly prized and desired, in this appraiser’s opinion, by the *1020 owners and by typical prospective purchasers for the type of property represented "by the subject, which very "factors were and are those which would be taken into account by the claimant and such typical prospective purchasers. After the appropriation, there was the intrusion of a 4-lane Interstate Highway adjacent to the subject property along its entire easterly boundary. The resultant noise, lights, and odors typical of high speed vehicular traffic, will replace the subject property’s former amenity elements of quietude, seclusion, privacy, tranquility and overall rural character. In order to enter the property after the appropriation, it is necessary to use the new access bridge which is an additional detriment in that it is a concrete, and steel structure of such length and bulk as to represent a completely inharmonious intrusion and offense to the rural atmosphere formerly enjoyed by the subject property.”
I find that the claimant’s land has been consequentially damaged by the intrusion of a concrete and steel bridge to give the remainder access, by the noise, odors and loss of seclusion, solitude and privacy caused by the traffic, by the loss of road frontage and points of access to different areas of the subject property.
All motions upon which decision was reserved at trial and which have not been disposed of herein, are hereby denied.
I find, based on all the evidence, the before value to be $1,450 per acre and the after value $1,350 per acre.
■This court finds that claimant suffered direct damage as follows:
FEE TAKING
Value of land taken, 9.033
acres at $1,450 per acre........ $13,100 (rd).
Value of improvement taken
(driveway) ................... 1,500
Total direct damage.................................... $14,600.
The court further finds that claimant’s remainder suffered consequen-
tial damages as follows:
Before value, 296.704
acres at $1,450 per acre ........ $430,200 (rd).
After value, 296.704
acres at $1,350 per acre ........ 400,500 (rd).
Total consequential damages .............................. $29,700
Total damages .......................................... $44,300
The court finds that the fair and reasonable market value of the subject property before the taking was $444,800 (rd); that the fair and reasonable market value of the subject property after the taking was $400,500 (rd) and that the amount by which *1021 the claimant has been damaged is $44,300; of this amount $14,600 represents direct damage and $29,700 represents consequential damage to the remainder. The claimant is entitled to an award therefor, together with appropriate interest.
The court has viewed the property.
The claimant is awarded the sum of $44,300 for all damages, direct and consequential, with interest thereon from December 20, 1966 to June 19, 1967 and from December 4, 1968 to the date of entry of judgment herein.